UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00085-RJC

| | |
|---|---|
| TERRIE SULLIVAN STILES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL SECURITY, ) <br> ) <br> Defendant. ) <br> ) <br> ) | **ORDER** |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (DEs 12, 14). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and affirms the decision. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

I. **BACKGROUND**

Plaintiff Terri Sullivan Stiles ("Stiles") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claim. Stiles filed her application for disability insurance benefits on May 30, 2018, with an alleged onset date of February 11, 2018. (Tr.[1] 10).

In denying Stiles' social security claim, the ALJ conducted a five-step sequential evaluation. (Tr. 10–21). At step one, the ALJ found that Stiles had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 12). At step two, the ALJ found that Stiles had

---

[1] Citations to "Tr." throughout the order refer to the administrative record at DE 9.

the following combination of severe impairments: lumbar and cervical degenerative disc disease, fibromyalgia, ulcerative colitis and irritable bowel syndrome, depression, anxiety, and posttraumatic stress disorder. (*Id.*). The ALJ also noted that Stiles had the following non-severe impairments: diabetes mellitus, obstructive sleep apnea, neuropathy, hypothyroidism, hyperlipidemia, and history of right knee pain. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id.* at 13–14). Before moving to step four, the ALJ found that Stiles had the residual functional capacity ("RFC") to perform light work as explained below:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl; no use of moving machinery, or exposure to unprotected heights; work is limited to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple, work-related decisions, and with few, if any, work place changes; capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting; the individual can perform simple tasks for two hour blocks of time with normal rest breaks during an eight hour work day; with no interaction with the public, and only occasional interaction with coworkers.

(*Id.* at 15). At step four, the ALJ found that Stiles could not perform any past relevant work but found at step five that Stiles could perform jobs that existed in significant numbers in the national economy, such as an electronics worker (41,000 jobs), laundry folder (397,000 jobs), and shipping/receiving weigher (80,000 jobs). (*Id.* at 21).

After exhausting her administrative remedies, Stiles brought the instant action for review of Defendant's decision denying her application for disability insurance benefits under Title II of the Social Security Act. (DE 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial

3
Case 1:21-cv-00085-RJC   Document 17   Filed 08/10/22   Page 3 of 13

evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Stiles argues that the ALJ's decision is not supported by substantial evidence because (1) the ALJ misevaluated the medical opinion of six providers, (2) the ALJ misevaluated her fibromyalgia impairment, and (3) the ALJ misevaluated her mental health treatment as conservative. (DE 13). In response, Defendant argues that the ALJ's decision was proper. This Court agrees.

#### A. Medical Opinions

For claims filed after March 27, 2017, the regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Thus, the treating physician rule is no longer applicable for claims filed after March 27, 2017. *Gleason v. Kijakazi*, No. 1:20-CV-00350-GCM, 2021 WL 5182102, at *2 (W.D.N.C. Nov. 8, 2021). Instead, when determining the persuasiveness of medical opinions and prior administrative medical findings the ALJ considers five factors: (1) supportability; (2) consistency; (3) relationship the medical source has with the claimant, including the (i) length, (ii) frequency, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors. *Id.* § 404.1520(a), (c). The most important of these factors are supportability and consistency:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520(b)(2), (c)(1)-(2). The ALJ's decision should explain how he considered both of these factors. *Id.* § 404.1520(b)(2).

### i. Opinion of treating physician assistant David Zollinger, PA

First, Stiles argues the ALJ misevaluated the opinion of David Zollinger, PA. Mr. Zollinger examined Stiles in August 2018 and opined that Stiles, during an eight-hour workday, could sit for four hours, stand for four hours, and walk for three hours. (Tr. 18, 792). Mr. Zollinger also determined that Stiles could lift and carry at the sedentary level. (*Id.*). Mr. Zollinger's opinion was provided on a fill-in-the-box type form with no medical analysis or explanation. (Tr. 792). The ALJ found Mr. Zollinger's opinion unpersuasive because Mr. Zollinger "did not explain or provide adequate evidence to support his conclusions" and the "limitations are not consistent with the opinions of the State agency consultants or physical examination findings." (Tr. 18). As support, the ALJ cited to two opinions from State agency consultants who found that Stiles could stand and/or walk for two hours in an eight-hour workday. (Tr. 18, 88, 120). The ALJ also cited to physical exams where Mr. Zollinger and other providers noted that Stiles was "negative for arthralgias, back pain, and myalgias;" she had "normal gait strength and tone;" "normal range of motion of all muscle groups;" "muscle strength: 5/5 in all major muscle groups;" and she "denie[d] back pain, joint deformity, joint paint, joint swelling/redness, muscle weakness, stiffness." (Tr. 18, 722, 724, 728, 732, 2506).

Here, the ALJ properly discussed and evaluated Mr. Zollinger's opinion and sufficiently explained why he found it unpersuasive. In evaluating Mr. Zollinger's opinion, the ALJ considered the supportability and consistency factors by noting that Mr. Zollinger's opinion is

neither consistent with Mr. Zollinger's own physical evaluations of Stiles nor other objective observations from State agency consultants. The ALJ thus "buil[t] an accurate and logical bridge from the evidence to his conclusion," *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016), and supported his conclusion with more than a scintilla of evidence such that a reasonable mind could be satisfied. *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986). Moreover, an ALJ is allowed to consider check-box forms, like Mr. Zollinger's opinion, as weaker evidence. *Pate v. Berryhill*, No. 5:16-CV-00864-D, 2018 WL 577998, at *8 (E.D.N.C. Jan. 10, 2018). Accordingly, as the ALJ supported his decision by substantial evidence "it is not within the province of [this] court" to reweigh the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

    ii.    <u>Opinion of treating physician Thomas Gary, M.D.</u>

Second, Stiles argues the ALJ misevaluated the opinion of Thomas Gary, M.D. In completing a form[2] for North Carolina state disability, Dr. Gary opined that Stiles was "unable to stand for long periods of time," had extreme fatigue and muscle weakness, and was permanently disabled. (Tr. 18, 2610). Dr. Gary also noted that Stiles could perform light work. (*Id.*). The ALJ found Dr. Gary's opinion partially persuasive because it referred to Stiles' prior job, which she was unable to perform. However, the ALJ noted that "Dr. Gary did not provide adequate support for the limitations indicated" and that Dr. Gary's opinion was not "consistent with the claimant's physical exam results showing normal gait." (Tr. 19). Dr. Gary's opinion, provided on the disability form, was a check-the-box and fill-in-the-box type form. (Tr. 2609–11). The physical exams from medical providers, which the ALJ cited to, state that Stiles was "negative for arthralgias, back pain, and myalgias;" she had "normal gait strength and tone;" "normal range of motion of all muscle groups;" "muscle strength: 5/5 in all major muscle groups;" and she "denie[d]

---

[2] The form listed "income maintenance case worker II" as Stiles' job.

back pain, joint deformity, joint paint, joint swelling/redness, muscle weakness, stiffness." (Tr. 19, 722, 724, 728, 732, 2506).

Here, the ALJ properly discussed and evaluated Dr. Gary's opinion and sufficiently explained why he found it partially persuasive. In evaluating Dr. Gary's opinion, the ALJ considered the supportability and consistency factors by noting that Dr. Gary's opinion was consistent in that Stiles could no longer perform her prior work but was inconsistent with physical evaluations of Stiles. The ALJ also noted that the ALJ failed to adequately support his limitations as the fill-in-the-box forms lacked support. The ALJ thus "buil[t] an accurate and logical bridge from the evidence to his conclusion," *Monroe*, 826 F.3d at 189, and supported his conclusion with more than a scintilla of evidence such that a reasonable mind could be satisfied. *Smith*, 782 F.2d at 1179. Moreover, an ALJ is allowed to consider check-box forms, like Dr. Gary's opinion, as weaker evidence. *Pate*, 2018 WL 577998, at *8. Accordingly, as the ALJ supported his decision by substantial evidence "it is not within the province of [this] court" to reweigh the evidence. *Hays*, 907 F.2d at 1456.[3]

> iii. <u>Opinions of State agency consultants Evelyn Jimenez-Medina, M.D., and Dakota Cox, M.D.</u>

Third, Stiles argues the ALJ misevaluated the opinions of the State agency consultants Evelyn Jimenez-Medina, M.D., and Dakota Cox, M.D. Dr. Jimenez-Medina and Dr. Cox found that, beginning in 2018, Stiles could perform light work and could stand or walk for two hours out of an eight-hour workday. (Tr. 19, 88, 120). The opinions included explanations and were not fill-in-the-box forms. (*Id.*). The ALJ found the opinions "partially persuasive," explaining that

---

[3] To the extent Stiles argues the ALJ failed to discuss all the treatment notes from North Georgia Family Medicine in determining the supportability factor for Dr. Gary and Mr. Zollinger, it is well settled that an ALJ "need not discuss all evidence presented to her" and must only explain why "significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). Stiles has failed to show how this evidence was significant and, even if it was, Stiles has failed to show how it would warrant a different conclusion such that any error was not harmless.

"[w]hile the consultants support their opinions with explanation, the evidence of record does not support a limitation to two hours of walking or standing each day." (Tr. 19). The ALJ explained the inconsistency with the record evidence, highlighting after Stiles' spinal surgery that her symptoms improved and she had a normal gait. (*Id.*). In particular, the ALJ cited to a physical exam conducted after Stiles' spinal surgery in March 2020, where Stiles "denie[d] back pain, joint deformity, joint paint, joint swelling/redness, muscle weakness, stiffness." (Tr. 19, 2506).

Here, the ALJ properly discussed and evaluated the State agency consultants' opinions and sufficiently explained why he found them partially persuasive. In evaluating the opinions, the ALJ considered the supportability and consistency factors by noting that the opinions were supported by explanations but were not consistent with record evidence showing Stiles had improved symptoms and a normal gait after spinal surgery. The ALJ thus "buil[t] an accurate and logical bridge from the evidence to his conclusion," *Monroe*, 826 F.3d at 189, and supported his conclusion with more than a scintilla of evidence such that a reasonable mind could be satisfied. *Smith*, 782 F.2d at 1179. Accordingly, as the ALJ supported his decision by substantial evidence "it is not within the province of [this] court" to reweigh the evidence. *Hays*, 907 F.2d at 1456.

      iv.      <u>Opinion of treating physician assistant Londyn Conner, PA-C</u>

Fourth, Stiles argues the ALJ misevaluated the opinion of treating physician assistant Londyn Conner, PA-C. Ms. Conner completed a disability eligibility form in May 2018. (Tr. 19, 2612–14). Ms. Conner noted that Stiles' mental "diagnoses impact [her] ability to focus, concentrate, give close attention to detail [and] tolerate interacting with public. She is unable to tolerate the stress level of the duties involved in her work." (Tr. 19, 2613). The ALJ found this opinion "partially persuasive" because it applied to Stiles' prior work. (Tr. 19). However, the ALJ noted that "Ms. Conner does not provide support for her conclusions, which are not consistent with the claimant's conservative mental health treatment and improved symptoms." As support,

the ALJ cited psychiatric treatment notes. One such note was written by Ms. Conner in April 2019 and stated that Stiles is

> [c]asually dressed with good personal hygiene. Speech is normal rate and volume. Mood is depressed with congruent affect. Motor behavior is slowed, grimaces in pain. Thoughts are logical and goal directed. Attitude is cooperative with good eye contact. Thought content negative for SI [suicidal ideation]/ HI [homicidal ideation]. Judgment and insight are good. Patient is grossly cognitively intact. Alert and oriented []. No impairment in memory.

(Tr. 19, 1670). During another visit note from October 2019, which was also cited by the ALJ, Ms. Conner used almost identical language. (Tr. 19, 2430). Of note, the ALJ acknowledged that in February 2018 Stiles was involuntarily committed to a behavioral health institute for six days after she attempted to overdose on her medications following an argument with her children. (Tr. 17). However, since early 2018, Stiles has been treated with therapy and medication, has not been committed, and she denies suicidal ideations.

Here, the ALJ properly discussed and evaluated Ms. Conner's opinion and sufficiently explained why he found it partially persuasive. In evaluating the opinion, the ALJ considered the supportability and consistency factors by noting that the opinion applied to Stiles' prior work but that it lacked support for the conclusions and was not consistent with Stiles' conservative mental health treatment and improved symptoms. As shown in the facts outlined by the ALJ, after Stiles was briefly committed, she has been conservatively treated with therapy and medications and she denies suicidal ideations. This shows her symptoms have improved since 2018 and is consistent with the record. The ALJ thus "buil[t] an accurate and logical bridge from the evidence to his conclusion," *Monroe*, 826 F.3d at 189, and supported his conclusion with more than a scintilla of evidence such that a reasonable mind could be satisfied. *Smith*, 782 F.2d at 1179. Accordingly, as the ALJ supported his decision by substantial evidence "it is not within the province of [this] court" to reweigh the evidence. *Hays*, 907 F.2d at 1456.

### v. Opinion of treating physician Sharon Moss, Ph.D.

Fifth, Stiles argues the ALJ misevaluated the opinion of treating provider Sharon Moss, Ph.D. Dr. Moss submitted a medical source statement from June 2020, which the ALJ explained:

> Dr. Moss opined that claimant had "chronic and acute stressors interfering with reliable daily functioning" and had a poor prognosis. Dr. Moss indicated the claimant was unable to meet competitive standards in several areas and was seriously limited in several more. She states the claimant would miss four days or more of work each month.

(Tr. 19, 2682–87). The ALJ found this opinion was "not persuasive" because "Dr. Moss did not provide adequate explanation to support many of the check boxes indicated" and "the extreme limitations are not consistent with the claimant's conservative treatment history and improved symptoms." (Tr. 19). As support, the ALJ cited to psychiatric treatment notes from October 2019 that said Stiles had good personal hygiene, normal speech, logical thoughts, a cooperative attitude, good judgment, intact cognition, no impairment in memory, and no suicidal ideations. (Tr. 19, 2425).

Here, the ALJ properly discussed and evaluated Dr. Moss' opinion and sufficiently explained why he found it unpersuasive. In evaluating the opinion, the ALJ considered the supportability and consistency factors by noting that the opinion did not provide adequate support for the check boxes indicated, and the extreme limitations were inconsistent with Stiles' conservative treatment history and improved symptoms. As shown in the facts outlined by the ALJ, after Stiles was briefly committed, she has been conservatively treated with therapy and medication and denies suicidal ideations. This also shows that her symptoms have improved since early 2018 with she was suicidal. The ALJ thus "buil[t] an accurate and logical bridge from the evidence to his conclusion," *Monroe*, 826 F.3d at 189, and supported his conclusion with more than a scintilla of evidence such that a reasonable mind could be satisfied. *Smith*, 782 F.2d at 1179. Moreover, an ALJ is allowed to consider check-box forms, like Dr. Moss' opinion, as

10
Case 1:21-cv-00085-RJC    Document 17    Filed 08/10/22    Page 10 of 13

weaker evidence. *Pate*, 2018 WL 577998, at *8. Accordingly, as the ALJ supported his decision by substantial evidence "it is not within the province of [this] court" to reweigh the evidence. *Hays*, 907 F.2d at 1456.

### B. Fibromyalgia

Stiles also argues the ALJ misevaluated her fibromyalgia impairment as the ALJ relied on her normal gait to discredit her subjective complaints regarding fibromyalgia, in violation of *Arakas*. In *Arakas*, the Fourth Circuit ordered remand where the ALJ "improperly discount[ed] Arakas's subjective complaints of pain and fatigue, based largely on the lack of objective medical evidence substantiating her statements." *Arakas v. Commissioner*, 983 F.3d 83, 95–96 (4th Cir. 2020). In particular, the Fourth Circuit found that because "fibromyalgia typically [does] not produce clinical and laboratory abnormalities," the ALJ erred by "effectively require[ing] objective evidence for a disease that eludes such measurement." *Id.* at 96 (internal quotations omitted). Thus, *Arakas* stands for the proposition that an ALJ cannot "effectively require" objective evidence of fibromyalgia. *Id.* at 97. This occurs when the "chief, if not definitive, reason for discounting [claimant's] complaints" is a lack of objective medical evidence. *Id.* However, while the ALJ cannot discount claimant's subjective complaints based on objective medical evidence (or lack thereof), he can "substantiat[e] the claimant's impairment" with that evidence. *Id.* at 97–98.

Here, unlike in *Arakas*, the ALJ never discounted Plaintiff's subjective complaints, nor did the ALJ ever specifically discredit Stiles' because she had a normal gait. Instead, the ALJ found fibromyalgia to be a "severe impairment" that was "ongoing." (Tr. 12, 17). While the ALJ found that Stiles' "overall capacity" had improved after the spinal surgery, the ALJ still accounted for fibromyalgia in the RFC. (Tr. 17) ("The above residual functional capacity accounts for the

limitations that reasonably result from the claimant's back impairments, fibromyalgia, and pain."). Thus, the ALJ did not discount Stiles' complaints based on a normal gait and did not "effectively require" objective evidence to prove her impairment.

### C. Conservative Mental Health Treatment

Stiles further argues the ALJ mischaracterized her conservative mental health treatment and improved symptoms. "[I]t is well established in this circuit that the ALJ can consider the conservative nature of a claimant's treatment." *Dunn v. Colvin*, 607 Fed. Appx. 264 (4th Cir. 2015). However, the Fourth Circuit has found an "ALJ mischaracterize[s] the treatment record as 'conservative' where plaintiff had extensive documentation of 'degenerative changes in her spine, a sclerotic lesion centered in the left humeral metadiaphysis, lupus with corresponding symptoms, spinal stenosis, and injury to her brachial plexus and corresponding nerve damage' as well as a developed record of taking 'powerful analgesics' and multiple surgeries, including one to 'remove her left rib to alleviate pain.'" *Woodlief v. Berryhill*, No. 5:16-CV-00191-FL, 2017 WL 4164076, at *4 (E.D.N.C. Sept. 20, 2017) (quoting *Lewis v. Berryhill*, 858 F.3d 858, 868–69 (4th Cir. 2017)).

Here, the ALJ was not improperly "playing doctor" as the Fourth Circuit warned in *Lewis*. 858 F.3d at 869. Instead, as the ALJ noted, Stiles' mental health treatment has been "generally routine and conservative" since early 2018 and involved therapy sessions and medication. (Tr. 17). The ALJ did note that Stiles was involuntarily committed in February 2018 after attempting to overdose on medication. However, she was released after six days and, since that time, treatment notes show she has not been suicidal. Instead, as the treatment notes from April and October 2019 show, Stiles has good personal hygiene, normal speech, logical and goal directed thoughts, a cooperative attitude, good judgment, intact cognition, no memory impairment, and no suicidal ideations. (Tr. 19, 1670). This also shows that Stiles' mental health symptoms have

improved as she has not been committed again, nor has she had suicidal ideations. Accordingly, the ALJ did not mischaracterize Stiles' treatment history and improved symptoms in violation of *Lewis*.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 12), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (DE 14), is **GRANTED**; and

3. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: August 10, 2022

Robert J. Conrad, Jr.
United States District Judge